CLOSED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MARY J. GRUNDY,** | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 04-1096 (WHW) |
| | : | |
| **JO ANNE B. BARNHART** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY** | : | |
| | : | |
| Defendant. | : | |

**Walls, District Judge**

Plaintiff Mary J. Grundy ("Grundy" or "plaintiff") appeals the denial of supplemental security income ("SSI") benefits. This Court affirms the administrative law judge's ("ALJ") decision to deny benefits.

**BACKGROUND**

**A.     Procedural History**

On May 2, 2002, Plaintiff filed an application for SSI benefits. (Tr. 15.)   The claim was denied initially and on reconsideration.   At plaintiff's request a hearing was held on July 14, 2003 in Newark, New Jersey before ALJ Dean W. Determan. (Tr. 15.)   On August 7, 2003 ALJ Determan issued an unfavorable decision, finding plaintiff was not disabled because evidence indicated that she could return to her past occupation as a fast food service worker. (Tr. 19.)   An

-          -

NOT FOR PUBLICATION                                          CLOSED

appeals council denied plaintiff's request for review in a decision dated February 2, 2004. (Tr. 4-

7.)  Plaintiff then filed this timely action before the Court.

**B.     Employment History**

Plaintiff is a fifty-one-year-old woman with an eighth grade education.   Plaintiff testified

that she could not read or write very well. (Tr. 136-138.)   Her past relevant work experience

includes employment as a hospital linen washer and a fast food worker. When she worked as a

hospital linen washer her duties included operating a machine and hanging sheets and tablecloths

to be washed.   This job required a lot of bending and heavy lifting.  Her most recent employment

was in April 1999, when she was employed as a fast food cook. This job required standing for

long periods of time and lifting boxes weighing between thirty to forty pounds. (Tr. 47.)

**C.     Medical History**

On or about April 1, 1999 plaintiff alleges that she became injured when she was

involved in a bus accident that caused injury to her back and knees. (Tr. 145-147.) Plaintiff

claims she visited the emergency room at Newark Beth Israel Medical Center on April 1, 1999,

however there is no evidence of this visit in the record.   According to plaintiff, during the

emergency room visit X-rays were taken and she was given pain medication. (Tr. 40.)   The next

time plaintiff sought medical treatment was in May 1999 at University Hospital in Newark, New

Jersey where she received a blood transfusion due to a drop in her hemoglobin count caused by

chronic anemia. (Tr. 39.)   Plaintiff has a history of chronic anemia caused by uterine fibroids.

(Tr. 93.)   Medical records show that plaintiff was admitted to University Hospital on October 8,

2000 for a blood transfusion. (Tr. 93-94.)   At this time plaintiff was diagnosed with iron

NOT FOR PUBLICATION                                                          CLOSED

deficiency anemia, and she was advised to receive a hysterectomy by Dr. Vivek Vadahera but

refused the procedure. (Tr. 93-94.)   On December 1, 2001, plaintiff underwent an outpatient

surgical procedure at University Hospital to remove fibroidal tissue in her uterus. (Tr. 124-126.)

In September 2002, plaintiff was admitted to the hospital and diagnosed with symptomatic

fibroid uterus causing menorrhagia.[1] (Tr. 18.)   During this visit a pelvic and abdomen ultrasound

showed multiple benign tumors in plaintiff's uterus, her gallbladder was slightly enlarged, and an

endometrial biopsy confirmed endometrial irregularities. (Tr. 102-103.)   Patient was released

and told to follow up with a health clinic doctor. A social worker was contacted on plaintiff's

behalf to set up assistance and charity care.   In December 2002, plaintiff received dilation

treatments.  On May 8, 2003, plaintiff was once again admitted to University Hospital for a blood

transfusion to treat anemia caused by heavy bleeding associated with uterine fibroids.   Upon

discharge, plaintiff was given Tylenol, Benadryl, Lasix (antihypersensitive medication) and an

iron supplement. (Tr. 116.)

     Dr. Edwards performed a consultative examination on August 13, 2002.   Dr. Edwards

reported that plaintiff walked with no impairment of gait and without an assistive device.   The

only problems noted in plaintiff's medical history are heavy menstrual periods and low

hemoglobin count.   She was able to squat, walk on heels and toes and had no muscle atrophy or

sensory deficits. (Tr.79-80.) Plaintiff complained of pain in her lower back and that both her

knees "pop" out of place occasionally.   A range of motion examination showed a reduction in

the knees of ten degrees on the right.   Range of motion in the lumbar spine was reduced.

---

[1] Menorrhagia: excessively prolonged or profuse menses (menstrual cycle). (Stedman's Medical Dictionary 26th Ed.)

NOT FOR PUBLICATION                                                    CLOSED

Plaintiff complained of tenderness in the paraspinal muscles and lumbosacral spine.   Dr.

Edwards believed that plaintiff was exaggerating her symptoms to some degree since there was

no definite showing of weakness in the knee joint ligaments. (Tr. 79-80.)   His final diagnosis

was osteoarthritis of the lumbosacral spine and both knees.

On August 26, 2002 a state agency staff orthopedist reviewed plaintiff's file. (Tr. 81-88.)

The orthopedist noted that plaintiff's symptoms were disproportionate to physical findings in the

record. (Tr. 86.)   The physician also determined that plaintiff could lift and carry up to fifty

pounds occasionally, twenty-five pounds frequently, and that she could stand, walk and sit for 6

hours in an 8-hour workday. (Tr. 82.)   On May 8, 2003, plaintiff was hospitalized again and was

found to have severe anemia requiring a blood transfusion. (Tr. 18.)

During a July 14, 2003 hearing before ALJ Determan plaintiff testified that she visits the

hospital emergency room often due to her anemia. (Tr. 141.)   Plaintiff testified that because of

her injuries she is unable to work and complete daily activities because she is in too much pain,

and always fatigued. (Tr. 145-150.)   The anemia causes her to feel weak and short of breath,

forcing her to lay down and rest every couple of hours during the day. (Tr. 148.)   Plaintiff

testified that she has problems with her knees, because they "pop out of place," and has severe

arthiritis in both knees.   She does not use a cane for support or to ease the pain.   To treat her

anemia, plaintiff takes iron supplements, and to treat her pain she takes Tylenol twice a day.

**DISCUSSION**

A.      **Standard of Review:**

NOT FOR PUBLICATION                                              CLOSED

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C.

§ 405(g). The district court must affirm the Commissioner's decision if it is "supported by

substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422, 427 (3d

Cir. 1999); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). "Substantial evidence is more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting

Consolidated Edison Co. v. NLRB , 305 U.S. 197, 229 (1938)). While substantial evidence must

have real probative weight, it "may be less than a preponderance." Brown v. Bowen, 845 F.2d

1211, 1213 (3d Cir. 1988) (citing Stunkard v. Secretary of Health & Human Services, 841 F.2d

57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases,

'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if

the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225

F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).  "A

single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or

fails to resolve, a conflict created by countervailing evidence." Morales, 225 F.3d at 317. Cursory

conclusions unsupported by evidence cannot justify an ALJ's decision. Id. "[A] reviewing court

may remand a case to the Secretary for good cause, 'where relevant, probative and available

evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability

benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana

v.Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa.1976)).

NOT FOR PUBLICATION                                              CLOSED

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain; (4) the claimant's educational background, work history and present age." Snee v. Secretary of Health & Human Services, 660 F. Supp 736, 738 (D.N.J. 1987); accord Blalock v.Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision...[is] accompanied by a clear and satisfactory explication of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B. Standard for the Commissioner's Determination of Disability**

"Disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Barnhart v. Thomas, 124 S. Ct. 376, 379 (2004); Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

The Commissioner must follow a five step sequential process to determine if an applicant is disabled and eligible for Social Security Disability benefits. 20 C.F.R. § 404.1520. The Commissioner must first ascertain whether or not the claimant is currently engaged in "substantial gainful activity." Plummer, 186 F.3d at 428. "Substantial gainful activity" is defined as "the performance of significant physical or mental duties...for remuneration or profit."

**NOT FOR PUBLICATION**                                    **CLOSED**

Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978). If the claimant is not engaged in "substantial gainful activity" then the ALJ must determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428. A severe impairment is "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." Thomas, 124 S. Ct. at 379; §§ 404.1520(c); 416.920(c).  If the claimant's impairments are severe, the ALJ must further determine if they are listed in Appendix 1 of the Social Security Regulations 20 C.F.R. § 404.1520 or are equivalent to the impairments listed there. Plummer, 186 F.3d at 428; § 404.1520. If the impairments are not listed in or equivalent to those listed in the appendix, then the ALJ must make a finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119. Finally, if the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform" taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

**ANALYSIS**

**A. Substantial Evidence Supports the ALJ's Decision**

*1) Substantial Gainful Activity*

The ALJ concluded in step one that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.   Plaintiff does not dispute this finding.

*2) Determination of Severe Impairment*

- 7 -

NOT FOR PUBLICATION                                         CLOSED

        The ALJ concluded in step two that plaintiff has osteoarthritis and chronic anemia, and that

both are severe impairments but not severe enough to medically equal the impairments listed in

Appendix 1, Subpart P, Regulations No.4. (Tr. 17,19.).

*3) Listing of Impairments*

        When analyzing plaintiff's claim under step three, the ALJ must determine whether

plaintiff's impairment matches or is equivalent to a listed impairment. See Plummer, 186 F.3d at

428.  The ALJ determined that plaintiff has osteoarthritis and chronic anemia, impairments that are

severe within the meanings of Regulations, but not severe enough to medically equal the

impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 16-17.)  Plaintiff alleges that

the ALJ's decision does not sufficiently explain his reasons for his conclusion that her impairment

is not severe enough. Specifically plaintiff alleges that the ALJ failed to properly evaluate the

plaintiff's anemia. (Pl's Br. at 3.) In order to establish disability under the Act, plaintiff must

establish that she is unable to engage in substantial gainful activity because of a physical or mental

impairment that is expected to last for a continuous period of at least twelve months. 42 U.S.C. §

1382 c(a)(3).  The claimant bears the burden of proof to establish entitlement to disability insurance

benefits.

        Although it is true that the ALJ's decision must be supported by substantial evidence, he does

not have to set forth every piece of evidence in the record.   "[An] ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph

would…suffice." Cotter v. Harris, 650 F. 3d at 482.  The ALJ must only set forth and analyze the

essential evidence upon which his decision was based.   "An examiner's findings should…include

**NOT FOR PUBLICATION**                                      **CLOSED**

a statement of subordinate factual foundations on which the ultimate conclusions are based, so that a reviewing court may know the basis for the decision." <u>Cotter v. Harris</u>, 650 F. 2d 481, 482.   In the present case the ALJ did consider the limitations resulting from the plaintiff's chronic anemia. There is no evidence in the medical record that plaintiff suffered from low hemoglobin levels for longer than a period of three months.   Also, plaintiff's condition is treatable by blood transfusions. Although these transfusions require hospital visits of up to three days, the record shows that these visits only occurred about once every year.    On more than one occasion plaintiff's doctors recommended that she receive a hysterectomy to permanently treat her condition.    However, plaintiff never followed up with this procedure.    In his opinion the ALJ acknowledged that plaintiff's chronic anemia does cause fatigue, but found that her condition is treatable and therefore is not permanently debilitating.   The basis for the ALJ's decision were discussed and set forth in his decision.

*4) Residual Functional Capacity*

        The analysis then proceeded to step four, where the ALJ must determine plaintiff's residual functional capacity ("RFC") to perform her "past relevant work." <u>Plummer</u>, 186 F. 3d at 428; 20 C.F.R. § 404.1520(d).  RFC is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 416.945; Social Security Ruling 96-8p.   In making this decision the ALJ must consider all symptoms including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. § 416.929.

NOT FOR PUBLICATION                                              CLOSED

The ALJ determined plaintiff retains the RFC for light work activity. (Tr. 18.)  Plaintiff

alleges that the ALJ failed to make a proper RFC determination because he did not sufficiently

discuss the functional demands of "light" work. (Pl's Br. at 5.)  Plaintiff cites to the social security

ruling instructions for assessing claimant's RFC to support her claim.  Specifically, Social Security

Ruling 96-8p, which instructs that an RFC assessment, must first identify plaintiff's functional

limitations and discuss these limitations on a function-by-function basis, and only after that has been

done may the RFC be expressed in terms of exertional levels of work. (Pl's Br. at 6.)  The ALJ's

decision identified certain functional demands of plaintiff's work related activities, and discussed

her ability to perform the work related activities.   The ALJ also discussed the objective medical

findings regarding plaintiff's physical limitations or restrictions.   In particular the ALJ referenced

plaintiff's consultative examination in which the doctor observed that plaintiff had a normal gait,

was able to walk, squat, and had no sensory or reflex loss. (Tr. 79-80.)   These clinical findings

support the ALJ's RFC decision, and show that the ALJ considered all of plaintiff's functional

limitations and restrictions.   In addition the ALJ's decision discusses the State Medical Agency

review, which determined plaintiff was capable of lifting and carrying up to fifty pounds

occasionally, twenty-five pounds frequently, and she could stand, walk, and sit for 6 hours in an 8-

hour workday. (Tr. 81-86.)   It was determined that plaintiff is capable of performing work that

exceeds the physical demands for light work. (Tr. 81-88.)

Plaintiff also alleges that the ALJ erred by finding that she could return to her past relevant

work as a food service worker. (Pl.'s Br. at 6.)  There is conflict in the record regarding plaintiff's

past relevant work history, and the exertional demands of her job as a fast food service worker.

**NOT FOR PUBLICATION**                                               **CLOSED**

Plaintiff has the burden of submitting the necessary evidence to support her claims. It is the ALJ's duty to evaluate and weigh the conflicting evidence and resolve these material conflicts.   Plaintiff reported that her past work required her to stand all day and lift and carry items weighing less than ten pounds. (Tr. 69.)   There is nothing in the record that contradicts the ALJ's findings that plaintiff could return to this work.   None of plaintiff's treating physicians or the state agency physician determined that plaintiff was unable to return to this work.   "A cardinal principal guiding disability eligibility determination is that the ALJ must accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a prolonged period of time." Morales v. Apfel, 224 F.3d 310, 317 (3d Cir. 2000).   During testimony, plaintiff had the opportunity to offer evidence that she was not capable of performing past work, however she did not and therefore based on the record and the evidence presented the ALJ's decision is supported by substantial evidence.

**CONCLUSION**

Based on the evidence in the record, there is no medical evidence contradicting the ALJ's finding that Plaintiff can return to her past relevant work.   There is substantial evidence to support the decision of the Administration to deny benefits to the Plaintiff.

For the preceding reasons the ALJ's decision if AFFIRMED.


                                              **s/William H. Walls, U.S.D.J.**